USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-6-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
AIMIS ART CORP.,                    :
                                    :    08 Civ. 8057 (VM)
                    Plaintiff,      :
                                    :    **DECISION AND ORDER**
    - against -                     :
                                    :
NORTHERN TRUST SECS., INC. et al.,  :
                                    :
                    Defendants.     :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Aimis Art Corporation ("Aimis") brought this putative class action regarding the purchase of auction rate securities.[1]  Aimis alleges violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) ("§ 10(b)"); Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"); and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("§ 20(a)").  The amended complaint, dated January 5, 2009 ("Amended Complaint"), names as defendants Northern Trust Securities, Inc., Northern Trust Corporation, and Northern Trust Company (collectively, "Defendants").

Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  For the reasons stated below, the motion to dismiss is GRANTED in its entirety.

---

[1]  The term "auction rate securities" as used in this Decision and Order is defined below in the Court's discussion of the factual allegations.

# I. BACKGROUND[2]

A.   PARTIES

Defendant Northern Trust Corporation is a financial holding company that provides, among other things, investment management solutions for its clients.  Defendant Northern Trust Securities, Inc. is registered with the SEC as a broker-dealer, pursuant to § 15(b) of the Exchange Act.  Defendant Northern Trust Company is a banking corporation, and the primary subsidiary of Northern Trust Corporation.

Lead plaintiff Aimis purchased auction rate securities through Defendants in August 2007.

B.   FACTUAL ALLEGATIONS

1.   Auction Rate Securities

The Amended Complaint describes auction rate securities as "either municipal or corporate debt securities or preferred stocks that are long term or perpetual-variable-rate securities and which pay interest at rates set at periodic 'auctions.'" (Amended Complaint ¶ 15.)  The Amended Complaint alleges that auctions for such securities began to fail in the second half of 2007 and that 87% of those auctions failed on February 13, 2008, when "it was disclosed that auction rate

---

[2]   The facts below are taken from the Amended Complaint, which the Court accepts as true for the purpose of ruling on a motion to dismiss.  See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Technology Fin. Group, Inc., 67 F.3d 463, 465 (2d Cir. 1995)).  Except where specifically quoted, no further reference to this document will be made.

securities were very risky investments and were not equivalent to cash." (Id. ¶ 31.)  The Amended Complaint's description of the auction process presumably reflects the auction process before those auctions began to fail regularly.

According to the Amended Complaint, auction rate securities are sold at par value, and the return on such investments is determined by the interest rate or dividend yield set at auction.  Auctions are generally held every seven, twenty-eight, or thirty-five days, and interest or the yield is paid at the end of the auction period.  Such auctions are generally "Dutch" auctions, in which buyers specify the number of shares they want and the lowest interest rate or yield that they would be willing to accept.  The lowest rate or yield at which all of the securities can be sold is set as the "clearing rate," and the securities are then sold at par value.  Purchasers receive interest or a yield on the securities at the clearing rate, as established by the auction.  If there are more bids at the clearing rate than available shares, shares are divided pro-rata among those bidders.

If there are not enough bids to cover all of the securities being offered at an auction, the auction fails and no securities can be sold at that auction.  Current shareholders would then receive the "maximum rate" as the

-3-

return on their investment.   The maximum rate is set at a relatively low level for many corporate debt securities and preferred stocks.

Issuers of auction rate securities retain one or more broker-dealers to underwrite the offerings and conduct the auction.   Investors submit orders through a broker-dealer by a deadline set by the broker-dealer.   The broker-dealer can also place bids for its own account before submitting the orders to an auction agent.

> 2.   Aimis's Purchase of Auction Rate Securities

In August 2007, Defendants advised the president of Aimis to invest in auction rate securities.   Defendants allegedly represented that auction rate securities were, in effect, "as good as cash and could be received in a matter of days." (Id. ¶ 29.)   Aimis then invested $1.15 million in two funds containing auction rate securities.[3]

> 3.   Failure of Auction Rate Securities Auctions

The Amended Complaint alleges that auctions of auction rate securities began to fail in July 2007.   On February 13,

---

[3]   The Amended Complaint alleges that Defendants had "a significant financial incentive to sell auction rate securities" issued by Nuveen Investments, Inc. ("Nuveen"), because Defendants received substantial commissions for doing so and because Defendants and Nuveen have "an extremely close relationship." (Amended Complaint ¶ 23.)   Allegations regarding Defendants' motive for selling auction rate securities issued by Nuveen have no bearing on whether Aimis has adequately alleged that Defendants made fraudulent or misleading statements in connection with the sale of auction rate securities; nor do such allegations affect whether Aimis has alleged recoverable damages.   The Court will not consider these allegations in its analysis.

2008, 87% of the auctions of auction rate securities taking place on that date failed and "the market for auction rate securities collapsed, leaving holders of auction rate securities ... with no means of liquidating the investments." (<u>Id.</u> ¶ 6.) Up until that point, Aimis was ostensibly earning returns on its auction rate securities as set by the auctions held between August 2007 and February 13, 2008. After the February 13, 2008 collapse of the auction rate securities market, Aimis was told by Defendants that the money invested in the two auction rate securities funds was not available.

### 4.   Repurchase of Auction Rate Securities

Aimis filed the initial complaint in this action on September 17, 2008. On September 29, 2008, Defendants announced a program through which they would repurchase "certain illiquid auction rate securities." (<u>Id.</u> ¶ 37, <u>quoting</u> Defendants' press release, dated September 29, 2008.) In December 2008, Aimis received the par value of its August 2007 investment in auction rate securities.

### C.   PROCEDURAL HISTORY

Aimis originally filed this purported class action on September 17, 2008. By Order dated December 19, 2008, the Court appointed Aimis as lead plaintiff. Aimis filed the Amended Complaint on January 5, 2009, claiming that Defendants violated § 10(b) and Rule 10b-5 by failing "to disclose the

risks inherent in the auction rate securities market, including the risk that auctions could fail." (<u>Id.</u> ¶ 27.) Aimis alleges that Defendants told investors, in effect, that auction rate securities "were the same as cash and were highly-liquid, safe investments for short-term investing." (<u>Id.</u> ¶ 24.) The Amended Complaint further alleges that Northern Trust Corporation violated § 20(a) because it was a control person of Northern Trust Securities, Inc. and Northern Trust Company. The Amended Complaint states that Aimis "brings this action as a class action ... on behalf of a Class, consisting of all persons and entities who purchased auction rate securities from or through [Defendants] between September 16, 2004 and February 13, 2008, inclusive, and continued to hold such accounts and auction rate securities as of February 13, 2008." (<u>Id.</u> ¶ 43.)

Defendants now move to dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## II. **LEGAL STANDARD**

### A. <u>MOTION TO DISMISS</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (<u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard is

met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

B.    CLAIM UNDER § 10(b) AND RULE 10b-5

    To adequately state a cause of action for securities fraud under § 10(b) and Rule 10b-5, a plaintiff must assert facts showing that "the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001) (quoting San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808 (2d Cir. 1996)). Securities fraud actions are also subject to the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, as well as those of Federal Rule of Civil Procedure 9(b). See id.; Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000).

-7-

A plaintiff in a securities fraud action must also allege recoverable damages. As another court in this District recently noted in a case involving auction rate securities, § 28(a) of the Exchange Act limits recovery under § 10(b), and by extension, under Rule 10b-5, to "actual damages," but does not specify how such damages are to be calculated. See In re UBS Auction Rate Secs. Litig., No. 08 CV 2967, 2009 WL 860812, at *3 (S.D.N.Y. Mar. 30, 2009). The UBS Court observed that courts in § 10(b) actions "have fashioned relief using various measures, including out-of-pocket and benefit-of-the-bargain damages and rescission." Id. at *4. The court further noted that "appropriate grounds for damages in § 10(b) actions are not limitless, and courts have required plaintiffs to choose between rescinding a transaction and being paid restitution on the one hand and holding the defrauder to the bargain and recovering out-of-pocket losses resulting from the fraudulent transaction on the other hand." Id.

In the UBS case, the plaintiffs had already taken advantage of an offer by the defendant to repurchase the auction rate securities in question at par value, thereby receiving "a full refund of the purchase price." Id. at *5. The court found that plaintiffs were precluded from any further recovery for their claims regarding the purchase of auction rate securities because they had already elected a

rescission remedy and were not allowed to "seek additional interest or dividends as benefits of [auction rate securities] purchases they have already elected to disavow." Id. at *6.

C.   SECTION 20(A) LIABILITY

Liability for a violation of § 20(a) is "necessarily predicated on a primary violation of securities law." Rombach v. Chang, 355 F.3d 164, 177-78 (2d Cir. 2004); SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472 (2d Cir. 1996) (hereinafter "First Jersey"). Section 20(a) imposes liability upon "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder ... unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t. To establish a prima facie case, a plaintiff must show "a primary violation by the controlled person and control of the primary violator by the targeted defendant," and that "the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated." First Jersey, 101 F.3d at 1472.

### III.   DISCUSSION

On this motion to dismiss, Defendants argue that: (1) Aimis fails to allege recoverable damages; (2) Aimis fails to plead loss causation; (3) Aimis fails to plead that the

purported misrepresentations were false when made; (4) Aimis
fails to plead facts supporting a strong inference of
scienter; and (5) Aimis fails to plead a § 20(a) claim.  The
Court finds that Aimis has not alleged recoverable damages,
and the Amended Complaint must be dismissed.  The Court will
therefore not address Defendants' other arguments.

A.   AIMIS'S DAMAGES ARE NOT RECOVERABLE UNDER § 10(B) AND
     RULE 10B-5

     The Amended Complaint alleges damages from "the reduced
interest earned on the auction rate securities, which would
have been higher had the securities not been sold under false
pretenses."  (Amended Complaint ¶ 39.)  Aimis in particular
also allegedly suffered damages from the "lack of use of [its]
auction rate funds," as well as its inability to "purchase art
at auction during the period of time February-December 2008
that its auction rate securities were illiquid."  (Id. ¶ 40.)

     The Amended Complaint does not apply a specific label to
the alleged damages, but the claim that Aimis and members of
the class should be compensated for the "reduced interested
earned on the auction rate securities, which would have been
higher had the securities not been sold under false pretenses"
appears to be a claim for benefit-of-the-bargain damages.  See
UBS, 2009 WL 860812, at *5 (claim that fraudulent acts
"prevented Plaintiffs from receiving a sufficiently high rate
of interest or dividends to compensate them for the risk of

-10-

illiquidity associated with their [auction rate securities] investments" was premised on benefit-of-the-bargain measure of damages).   "The aim of benefit-of-the-bargain damages is to put an injured plaintiff in the position he would have been in had his expectancy ensued."   Id. (internal quotations marks and citation omitted).

Aimis's claims under § 10(b) and Rule 10b-5 must fail because Aimis has already received compensation for losses suffered as a result of the alleged misstatements or omissions.   As the court explained in UBS, a plaintiff in a § 10(b) and Rule 10b-5 action must "choose between rescinding a transaction and being paid restitution on the one hand and holding the defrauder to the bargain and recovering out-of-pocket losses resulting from the fraudulent transaction on the other hand."   Id. at *4.   "Rescission and restitution are alternatives to money damages; a plaintiff cannot both rescind a transaction and ask for the benefit of the bargain rescinded."   Id. at *5 (quoting Kauffmann v. Yoskowitz, No. 85 Civ. 8414, 1989 WL 79364, at *8 (S.D.N.Y. July 13, 1989) (quoting Quintel Corp., N.V. v. Citibank, N.A., 596 F. Supp. 797, 803 (S.D.N.Y. 1984))) (emphasis in original).   Aimis received the par value of its investment in the auction rate securities funds in December 2008, effectively rescinding the

transaction.   Aimis therefore cannot receive any further
recovery from the transaction.[4]

The claim based on damages allegedly caused by Aimis's
inability to purchase art from February 2008 to December 2008
fails for the same reasons.   However, this claim also fails
because a plaintiff in an action under § 10(b) and Rule 10b-5
"cannot recover for 'damages' based on hypothetical
investments he did not make."   In re Merrill Lynch Inv. Mgmt.
Funds Secs. Litig., 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006)
(citing Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723
(1975)).   Section 28(a) of the Exchange Act provides that "no
person permitted to maintain a suit for damages under the
provisions of this chapter shall recover ... a total amount in
excess of his actual damages on account of the act complained
of."   15 U.S.C. § 78bb.   This provision prevents courts from
awarding "speculative recoveries."   Panos v. Island Gem
Enters., Ltd., N.V., 880 F. Supp. 169, 175 (S.D.N.Y. 1995).

---

[4] Defendants argue that the Second Circuit has explicitly forbidden the
use of benefit-of-the-bargain damages in § 10(b) actions, citing Gordon
Partners v. Blumenthal, 293 Fed. Appx. 815, 817-18 (2d Cir. 2008), and
Gurary v. Winehouse, 235 F.3d 792, 799 (2d Cir. 2000), upon which Gordon
Partners relies.   Gurary relies in turn upon language in McMahan & Co. v.
Wherehouse Entm't, Inc., 65 F.3d 1044 (2d Cir. 1995).   The language in
McMahan that Gurary cites was from Levine v. Seilon, Inc., 439 F.2d 328,
334 (2d Cir. 1971), and that language was described by the McMahan court
as dicta; the McMahan court actually "affirm[ed] so much of the district
court's order as allows plaintiffs to recover benefit-of-the-bargain
damages under section 10 of the 1934 Act."   65 F.3d at 1045.
Notwithstanding the apparent confusion in the case law regarding the
availability of benefit-of-the-bargain damages in an action under § 10(b)
and Rule 10b-5, the Court finds that Aimis cannot recover anything beyond
what it already received when it effectively rescinded its purchase of the
auction rate securities investments.

Aimis's contention that it suffered damages when it could not use its funds to purchase unspecified works of art from February 2008 to December 2008 is precisely the kind of speculative claim for damages that the Exchange Act does not permit.  Aimis's § 10(b) and Rule 10b-5 claim is therefore dismissed.

B.    SECTION 20(a) CLAIM FAILS

To the extent that Aimis has failed to sufficiently allege a predicate violation of § 10(b), the control person claim under § 20(a) also fails.  See Rombach, 355 F.3d at 177-78; First Jersey, 101 F. 3d at 1472; Elliott Assocs., L.P. v. Hayes, 141 F. Supp. 2d 344, 360-61 (S.D.N.Y. 2000).

C.    LACK OF STANDING TO RAISE OTHER CLASS MEMBERS' CLAIMS

Aimis purports to represent a class "consisting of all persons and entities who purchased auction rate securities from or through [Defendants] between September 16, 2004 and February 13, 2008, inclusive, and continued to hold such accounts and auction rate securities as of February 13, 2008." (Amended Complaint ¶ 43.)  At least some of the purported class members ostensibly did not redeem their shares of auction rate securities investments at par value, and thus still hold those securities.  (See Lead Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint, dated March 9, 2009, at 8 n.6 ("Defendants do not

even acknowledge that the alleged class includes current or former Northern Trust customers who were sold [auction rate securities] by Northern Trust, but who were not offered a buy back and who continue to hold [auction rate securities] purchased for them by Northern Trust.").)

Named class plaintiffs must "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 199 (2d Cir. 2005) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975)). Named or lead class action plaintiffs who purport to represent a class must "demonstrate the requisite case or controversy between themselves personally and [defendants]." Warth, 422 U.S. at 502.

Aimis has not suffered damages that are recoverable in a § 10(b) and Rule 10b-5 action because it has already rescinded its purchase of auction rate securities and is entitled to no further recovery. Aimis therefore lacks standing to bring the claims of other members of the purported class who have not rescinded their auction rate securities transactions by redeeming those investments at par value. The motion to

-14-

dismiss is therefore granted as to Aimis's claims raised on behalf of the remaining class members.

D.   NO LEAVE TO REPLEAD

Aimis seeks leave to replead its complaint.  A court "should freely give leave" to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, "it is within the sound discretion of the district court to grant or deny leave to amend.  A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (internal citations omitted).

As discussed above, Aimis cannot plead damages that are recoverable under § 10(b) and Rule 10b-5, and Aimis lacks standing to bring claims on behalf of class members who supposedly have suffered damages different from those claimed by Aimis.  The Court finds that a repleading by Aimis would be futile, and denies Aimis's request for leave to replead.

### IV.  ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 24) of defendants Northern Trust Securities, Inc, Northern Trust Corporation, and Northern Trust Company, to dismiss the amended complaint

-15-

is GRANTED, and the amended complaint is dismissed with
prejudice.

The Clerk of the Court is directed to withdraw any
pending motions and to close this case.

**SO ORDERED**:

Dated:     New York, New York
           6 August 2009

                                    VICTOR MARRERO
                                       U.S.D.J.